**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-41155
Summary Calendar

TODD MILLER,

Plaintiff-Appellant,

v.

HARVEY BUNCE, III , et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
Civil Action No. 6:98-CV-382

June 7, 2000

Before SMITH, BARKSDALE and PARKER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant, Todd Miller ("Miller"), sued eight University of Texas Medical Branch faculty members for alleged constitutional violations pursuant to 42 U.S.C. § 1983 (1994) and for alleged violations of the anti-retaliation provision of the False Claims Act, 31 U.S.C. § 3730(h) (1994). The district court granted defendants' motion for summary judgment as to all claims. Miller appeals this ruling only with respect to his First Amendment retaliation claim. Because we agree with the district court that Miller failed to allege an adverse employment action,

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

we affirm.

## FACTUAL HISTORY AND PROCEEDINGS BELOW

Miller joined the Department of Preventative Medicine and Community Health ("PMCH") at the University of Texas Medical Branch in Galveston ("UTMB") as a faculty member in 1991. He holds a tenure track position with a nine year period in which to apply for and receive tenure. In June of 1995, Miller received a National Institutes of Health ("NIH") research grant. The terms of the grant stated that part of the money was to be used to fund ten percent of the salaries of defendants Grady and Freeman.[1]

Around the time that the grant became effective, Miller complained that he experienced problems working with Grady and Freeman.[2] Miller alleged that they failed to perform work required on the grant, yet they accepted salary support for such work. Miller wrote a letter to Freeman asking him to investigate the work that he and Grady performed. Upset by the letter, both Freeman and Grady complained to Miller's supervisor, defendant Markides.

On January 5, 1996, Miller, Grady, Freeman and Markides met unsuccessfully to discuss the problems that had arisen from the grant. Subsequent to this meeting, Freeman apparently resigned

---

[1] Grady and Freeman are professors and biostatisticians in PMCH who assisted Miller in the grant application process.

[2] Although the original complaint named eight defendants, on appeal, Miller is only pursuing his claims against defendants Harvey Bunce, III, Billy Phillips and Kyrakos Markides.

from the grant. Miller complained to defendant Bunce, PMCH Department Chair, about Freeman's receipt of salary support for work that he performed inadequately or not at all. Although Bunce concluded that Freeman adequately performed the required work, Miller alleged that Bunce did not give satisfactory evidence to support this conclusion. When the grant came up for renewal in May of 1996, Miller refused to sign the form because it required him to verify Freeman's time commitment. Miller informed NIH's Office of Management Assessment of this problem, but they expressed no interest in pursuing the matter and encouraged him, as did Bunce, to sign the renewal form.

Grady remained on the grant for some time after Freeman's resignation. Miller alleged that Grady did not perform tasks satisfactorily. At one point, Miller suggested that Grady correct and update some of the work he (Grady) had done. Grady allegedly resigned out of aggravation. Eventually, another statistician was assigned to Miller's project at no charge. Miller complained that this replacement was unqualified to do the job. The replacement was removed from the grant without another replacement, leaving Miller without the statistical support necessary to complete the grant project.

In January of 1997, defendant Meyer, Associate Vice President for Academic Affairs, informed Miller that he intended to take no further action in response to Miller's reports of misuse of grant funds. Miller then filed a second complaint with

-3-

NIH. We find no evidence in the record of an NIH response to this second complaint.

During and following the above-stated occurrences, Miller alleged that he experienced difficulty working with several of his other colleagues, including defendant Markides. Miller also complained that Markides and Bunce failed to adequately support him in his attempts to seek committee appointments and tenure. Despite these "problems," Miller was promoted to assistant professor in September of 1997.

At a point prior to Miller's submission of his tenure application, defendant Phillips, Director of the Division of Epidemiology and Biostatistics at PMCH, allegedly suggested to the department faculty that the rules of the Appointments, Promotion and Tenure Committee ("APT Committee") be changed. In June 1997, after nearly two years of review and while Miller's tenure application was pending, the APT Committee procedures were revised. Miller alleged that the changes were specifically intended to handicap his chances for obtaining tenure. Miller also complained that the defendants' actions compromised his tenure evaluation for a variety of reasons including the fact that he was "forced" to file an incomplete final report with NIH.

Miller argued that the defendants' retaliated against him for his investigation and reporting of what he termed "grant fraud" pertaining to the alleged inadequate work performed on the NIH grant. In addition to a host of claims not presented for

-4-

review here, Miller claimed that he was retaliated against for exercising his rights under the First Amendment. The district court granted summary judgment for the defendants on this issue because Miller failed to allege an adverse employment action took place. We agree with the district court's analysis and affirm its decision.

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo*, applying the same standard as the district court. The moving party is entitled to judgment as a matter of law when the record indicates no genuine issue as to any material fact. *See* FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Byers v. The Dallas Morning News*, 209 F.3d 419, 423 (5th Cir. 2000). If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case. *See Celotex Corp.*, 477 U.S. at 322. We will consider the evidence in the light most favorable to the non-movant, yet the non-movant may not rely on mere conclusory allegations in the pleadings; rather, the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248-49 (1986). After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable

-5-

juror could find for the non-movant, summary judgment will be granted.  *See Celotex Corp.*, 477 U.S. at 322; *see also* FED. R. CIV. P. 56(c).

### FIRST AMENDMENT RETALIATION CLAIM

To establish a *prima facie* case of retaliation for the exercise of free speech, a plaintiff must show that (1) his speech was protected; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected speech and the adverse employment action.  *See Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998); *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  We will assume without deciding, as did the district court, that Miller's allegations that his colleagues were not performing adequate work on the grant constitutes protected speech.  Our analysis of this case turns on whether Miller has alleged an adverse employment action.

"Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."  *Pierce v. Texas Dep't of Criminal Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994).  "Many actions which merely have a chilling effect upon protected speech are not actionable."  *Harrington*, 118 F.3d at 365.  In order to establish a constitutional injury, a plaintiff claiming retaliation for exercise of his first

-6-

amendment rights must allege more than mere trivial actions.
*See, e.g.*, *Pierce*, 37 F.3d at 1149 n.1 ("[W]e apply the main
analysis of *Rutan* to retaliation claims and require more than a
trivial act to establish constitutional harm.") (discussing *Rutan
v. Republican Party*, 497 U.S. 62, 76 n.8 (1990)).

Miller argues that the district court was in error in
failing to find that the "defendants' interference with and
refusal to timely consider" his tenure application did not
constitute an adverse employment action.[3]  The "one hundred and
fifty trivial acts of retaliation" Miller proffered as evidence
was described by the district court as "an attempt to persuade
the Court that the whole is greater by vast proportions than the
sum of its parts."  We agree with the district court that the
alleged harms suffered by Miller do not rise to the level of
constitutional deprivation.  We are counseled, in part, by this
court's statement regarding federal courts' involvement in the

---

[3]  This initial statement of the issue is parsed into three
arguments for reversal and a finding that the actions of the
defendants constituted adverse employment actions: (1) that the
retaliatory refusal to submit and consider Miller's tenure
application was a *de facto* denial of tenure; (2) that the
retaliatory delay of Miller's tenure application precluded him
from curing any deficiencies in his application prior to the
expiration of his non-tenured probationary term; and (3) that
defendants' retaliatory conduct in precluding Miller's tenure-
related activities "tended to affect" his employment status and
created an illegal barrier to an employment opportunity.  None of
these versions of the issue presented for review changes the
basis of our decision.  Therefore, we shall use the phraseology
Miller used in the "Statement of the Issue Presented for Review"
section of his initial brief.

management of public educational institutions.

> In public schools and universities across this nation, interfaculty disputes arise daily over teaching assignments, room assignments, administrative duties, classroom equipment, teacher recognition, and a host of other relatively trivial matters. A federal court is simply not the appropriate forum in which to seek redress for such harms.

> We have neither the competency nor the resources to undertake to micromanage the administration of thousands of state educational institutions. *Of all fields that the federal courts should hesitate to invade and take over, education and faculty appointments at the university level are probably the least suited for federal court supervision.*

*Dorsett v. Board of Trustees for State Colleges and Universities*, 940 F.2d 121, 123-24 (5th Cir. 1991) (emphasis added) (citations omitted). We do not accept Miller's invitation to ignore the established policy and precedent of this circuit and to begin a policy of micromanagement of university administrative decision making.

## CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's decision granting summary judgment to the defendants regarding Miller's First Amendment retaliation claim.

AFFIRMED